## POSTAL TELEGRAPH CABLE CO. v. B. SCHIFF.

Eastern Section.   January 7, 1928.

Petition for Certiorari denied by Supreme Court, April 7, 1928.

D. C. Webb, of Knoxville, for plaintiff in error.
Ben Winick, of Knoxville, for defendant in error.

THOMPSON, J.   The plaintiff, B. Schiff, instituted suit before a Justice of the Peace to recover damages from the defendant, Postal Telegraph Cable Company, for a delay in delivering a telegram which the plaintiff sent to David Blustein & Brother, New York City. The warrant summoned the defendant "to appear before me, or some other Justice of the Peace for said county, to answer the complaint of B. Schiff in a plea of debt due by damages resulting to plaintiff, due to an eight day delay on the part of defendant company in delivering a telegram to David Blustein & Bros. New York City, sent by plaintiff on December 23, 1923. Said delay resulting in a loss of $324.15 under five hundred dollars."

We regard the foregoing warrant or summons as alleging an action in tort based upon negligence.

The Justice of the Peace rendered judgment in favor of the plaintiff for $324.15. The defendant appealed the case to the circuit court where the same was tried by the Circuit Judge without the intervention of a jury. The Circuit Judge rendered judgment in favor of the plaintiff for the sum of $224.38 and court costs. The defendant filed a motion for a new trial and, the same being overruled, has

appealed to this court and has assigned error raising the question that there was no material evidence to support the judgment.

The plaintiff resided at Knoxville and bought furs for David Blustein & Brother in New York. It appears that the plaintiff travelled over East Tennessee and bought the furs wherever he found them. He worked on a commission basis and was paid by Blustein & Brother sometimes ten cents per fur and sometimes twelve and a half cents per fur. He would get from Blustein & Brother a price quotation; that is, a limit to which he could go in buying the furs, and after getting this quotation he would continue buying until he was advised by Blustein & Brother that the market had changed, etc.

On December 23, 1923, the plaintiff sent to Blustein & Brother a "night letter" as follows: "About fifteen hundred opossums and other furs here. Crowder paying for opossums around here seventy-two half. Bought furs at Asheville, but paid high. If any change in market wire."

The defendant failed to deliver this telegram or night letter. On the next day, i. e., December 24, 1923, plaintiff wrote Blustein & Brother a letter stating: "I sent you a night letter last night, but have not got any answer yet (6 p. m.) which I presume that there is no change in the market."

This letter reached Blustein & Brother on December 26, 1923, and on that date they wrote plaintiff as follows: "Replying to your favor of the 24th inst., we have no night lettergram from you last Monday."

Plaintiff received this letter on about the 28th and went to the defendant's office at Knoxville. There is a controversy in the evidence as to what occurred. Plaintiff testifies that the manager of defendant admitted to him that the telegram had not been delivered, and offered to return to plaintiff the amount which plaintiff had paid. But plaintiff denies that defendant's manager told him that he would have a duplicate telegram delivered to Blustein & Brother. The defendant's manager testifies that he told plaintiff that he would have a duplicate delivered to Blustein & Brother. We think the judgment of the lower court decides this controversy in favor of the plaintiff.

On December 29, 1923, plaintiff wrote Blustein & Brother to the effect that other people were paying as much as eighty cents for opossums in his territory.

On the morning of December 31, 1923, the defendant delivered to Blustein & Brother the night letter which plaintiff had sent on December 23rd and which, of course, quoted the price of opossums at seventy-two and one-half cents, and Blustein & Brother immediately wired plaintiff to "buy the opossums and other furs."

A little later and on the same day, i. e., December 31, 1923, Blustein & Brother received the letter which plaintiff had written them on December 29, 1923, and which quoted the price of opossums at eighty cents. Blustein & Brother, when they received the telegram, did not notice that it had been delayed from the 23rd until the 31st, and they thought they were answering a current telegram. Plaintiff, on the other hand, thought they were answering his letter of December 29th quoting the price of opossums at eighty cents and the result was that plaintiff thought he was authorized to buy opossums at eighty cents.

Upon receiving the telegram, plaintiff left Knoxville and during the next ten days, i. e., until January 10, 1924, he travelled around through the upper East Tennessee territory and into Virginia and bought a lot of opossums at eighty cents. In doing so he drew drafts on Blustein & Brother but they were unable to get into communication with him (as they did not know where he was) and he did not learn until he got back to Knoxville on the night of January 10, 1924, that Blustein & Brother were unwilling to pay as much as eighty cents per fur and the result was that he lost his commissions on all of the purchases. The trial judge, after itemizing the account, found that plaintiff lost $224.38, and as we understand it, the amount is not questioned.

However, defendant insists that the defendant's negligence was not the proximate cause of the plaintiff's loss, and that the defendant did not contemplate that such a loss would result from its failure to deliver the telegram.

After carefully examining the record we are convinced that the defendant's negligent failure to deliver the telegram until it was eight days old was the proximate cause of the plaintiff's loss and, therefore, under Western Union Telegraph Co. v. Green, 153 Tenn., 66, it is immaterial whether the parties contemplated that such a loss would result. As stated, we treat the case as one in tort and, having reached the conclusion that the damages were the proximate result of the defendant's negligence, the liability is made out.

Defendant also insists that both plaintiff and Blustein & Brother were guilty of negligence and that this defeats a recovery. After considering all the facts, we do not think that Blustein & Brother were guilty of negligence in not noticing that the telegram was eight days old when it was delivered to them. We do not see wherein plaintiff can be held guilty of negligence in not foreseeing that the defendant would deliver his telegram to Blustein & Brother when the same was eight days old and that Blustein & Brother would treat it as a current quotation of prices. In other words, it seems to us that the real and proximate cause of the loss was the defendant's failure to deliver the telegram promptly, and we cannot

see that either Blustein & Brother or plaintiff were guilty of such negligence as would constitute an intervening act which broke the causal connection.

The defendant also insists that the record shows that plaintiff had notice that the telegram had not been delivered and that anything that happened after this notice to the plaintiff could not be charged up to the defendant. It is true that plaintiff did have notice that the telegram had not been delivered, but it does not seem to us that he could have foreseen or anticipated that it would be later delivered and would convey to Blustein & Brother the belief that plaintiff then and at that time proposed to buy opossums at seventy-two and one-half cents.

Defendant also insists that the telegram at its top was dated December 23-31st and had the notation "Dup." and that this should have put Blustein & Brother on notice that it was a duplicate and was delivered late. The notation at the top of the telegram was as follows: "13NYQ1025AM 30 NL NL DUPE B D." Mr. Blustein testifies that he receives from twenty-five to fifty telegrams each day and that he did not notice that this telegram was a duplicate and was being delivered late. After examining the above-quoted notation at the top of the telegram it seems to us that his testimony was entirely reasonable, and we do not think he could be held guilty of negligence in not realizing that he was dealing with a delayed telegram.

The record shows that a considerable correspondence took place between the parties and that the same was filed as exhibits in the circuit court. It also seems that this correspondence had a material bearing upon the questions hereinbefore discussed. It seems to us that the probabilities are that this correspondence may have had considerable weight with the Circuit Judge in making up his mind about the case. However, the correspondence was not quoted in the bill of exceptions and was not sent up with the record, and it is doubtful in our mind whether or not we are justified in reviewing the record to determine whether or not there was material evidence to support the judgment.

We are convinced that the trial court correctly decided the case and that there was no error committed. An order will therefore be entered affirming the judgment of the lower court with costs.

Portrum and Snodgrass, JJ., concur.